NIEMEYER, Circuit Judge,
dissenting:
H.H., a severely disabled seven-year old girl — she can neither walk nor talk — and her mother commenced this action against two public school teachers for strapping H.H. into a wheelchair for too extensive a time, even though strapping H.H. into the chair was necessary to enable her to sit up in her chair. As the majority notes, “It is undisputed that, because of her disability, H.H. could not be seated safely in her chair without the use of some sort of restraint.” While the educational undertaking, and indeed her Individual Education Plan, required that H.H. be strapped in her chair for most of the school day, H.H.’s mother contends that the teachers strapped her in too long in furtherance of their own convenience and that the teachers maliciously mocked the child’s disability while she was in her chair. Based on these allegations, H.H. and her mother contend that the teachers violated H.H.’s constitutional right to be free from undue restraint.
The teachers contend that H.H. and her mother have not alleged a violation of a constitutional right, much less a well-established constitutional right of which they should have been aware. Accordingly, they claim that the complaint should be dismissed, based on their qualified immunity, and I agree.
To begin with, we have not found any case that holds that a teacher, who straps a disabled child in her wheelchair in the classroom, violates the child’s constitutional right to be free from restraint, even if the child is strapped in her chair a few hours longer than anticipated by the educational program and even if the restraint is imposed for improper motives. Any assumption that such a constitutional right exists as a well established right so that a reasonable teacher would know that she is violating the constitution has no basis in any Supreme Court case or Fourth Circuit case. Indeed, the closest case decided in our circuit involved a claim that police officers, who handcuffed a prisoner to a light pole in the middle of a deserted parking lot and left the prisoner there for hours until the police officers from another county could pick the prisoner up, violated the prisoner’s constitutional rights. See Robles v. Prince George’s County, Md., 302 F.3d 262 (4th Cir.2002). In that case, we held that the police officers did not *316 violate a well-established constitutional right. Id. at 270.
The most analogous decision we could find is the Eighth Circuit’s decision in Heideniann v. Rother, 84 F.3d 1021 (8th Cir.1996), where the plaintiff, a nine-year old nonverbal child with severe mental and physical disabilities, claimed her teachers violated her constitutional rights when they used a therapeutic treatment referred to as “blanket wrapping.” Under the procedure, the child was bound with a blanket so that she could not use her arms, legs, or hands for hours at a time. Despite the fact that the plaintiff alleged that the “blanket wrapping was used as a means of physical restraint ... [and] that it was administered as a substitute for educational and habilitative programming merely for defendants’ convenience,” id. at 1026, the Eighth Circuit held that the teachers’ conduct did not amount to a constitutional violation and that the teachers were entitled to qualified immunity. The court concluded that “even if the blanket wrapping treatment did constitute a substantial departure from professional norms, ... a reasonable official would not have known that to be true.” Id. at 1029.
H.H. and her mother have struggled both in their briefs and at oral argument to define a precise constitutional right that the teachers in this case allegedly violated. Ultimately they settled on the teachers’ “purposeless physical restraint” of H.H. in her chair, contending that it violated H.H.’s right to be free from unjustified bodily restraint, as protected by the Due Process Clause of the Fourteenth Amendment. They argued that the teachers violated H.H.’s protected liberty interest by keeping her “unnecessarily strapped and restrained in her wheelchair for hours at a time.”
On the record in this case, however, I simply cannot understand how one can contend that the physical restraint of H.H. was “purposeless.” The lap belt on H.H.’s chair had a very clear purpose, as her mother recognized, because H.H. could not be seated safely in her chair without being strapped in it. When we take the lap belt itself out of the calculus, we are left with a claim that keeping H.H. in her chair “for hours at a time” without instruction was in effect a purposeless and a constitutionally violative governmental restraint. Stated otherwise, H.H. and her mother must, of necessity, be contending that H.H. had a constitutional right to be instructed or to be out of her wheelchair. But school children are routinely required to sit in their chairs “hours at a time,” at the sole judgment of the teacher. Surely if a teacher required a classroom of students to be seated for a full school day because the teacher did not wish to teach the students or to interact with them, she would not be depriving the students of constitutionally protected liberty. I therefore, cannot understand how H.H. and her mother can claim a constitutional right for H.H. not to be kept in her chair for hours at a time when similarly situated non-disabled children do not have such a right.
By denying the teachers in this case qualified immunity, the majority seems to insist (1) that the teachers should have knowledge of some constitutional right that has not yet been defined by the Supreme Court or by the Fourth Circuit, and (2) that the teachers deliberately violated that constitutional right. Qualified immunity protects public school teachers “from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable [school teacher] would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). And the “relevant, dispositive inquiry in determining whether a right is *317 clearly established is whether it would be clear to a reasonable [school teacher] that [her] conduct was unlawful in the situation [she] confronted.” Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (emphasis added) (citing Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (“[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established” (emphasis added))).
Neither the plaintiffs nor the majority have identified any case that would instruct the teachers in this case that their conduct, even if improperly motivated, violated H.H.’s constitutional rights. The closest they come is a single, factually distinguishable case out of the Fifth Circuit, in which a teacher punished a nine-year old child by tying her to a chair with a jump rope for almost two school days, not allowing her even to use the restroom. See Jefferson v. Ysleta Indep. Sch. Dist., 817 F.2d 303, 304-5 (5th Cir.1987). Of course, the jump rope was not required for any safety consideration, as here, but rather was used to punish the child. Id.
In sum, the majority seems to be creating a right of public school children either to be instructed or to be free to roam the classroom as they wish. While H.H. and her mother may have claims for alleged failures to educate H.H. properly, they should not be allowed to morph those claims into constitutional claims against teachers in their personal capacity. I submit that the implication of the majority’s holding, which plows entirely new ground, is far-reaching and leaves public school teachers exposed to constitutional claims in circumstances where they may have simply exercised poor judgment, even for unacceptable reasons. Because we erroneously deny these school teachers qualified immunity, I dissent.